# Richmond

## PULASKI NATIONAL BANK, ET AL., EXECUTOR, ETC. v. GUIDA Q. HARRELL, INDIVIDUALLY, ETC.

January 15, 1962.

Record No. 5352.

Present, All the Justices.

*Garnett S. Moore* and *Alan D. Groseclose,* for the plaintiffs in error.

*John M. Goldsmith* and *Robert S. Irons* (*Goldsmith & Irons,* on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This proceeding originated on March 13, 1958, as a simple action at law—a motion for judgment by R. A. Hudson to recover from Guida Q. Harrell, individually, and as administratrix of the estate of T. W. Harrell, deceased, the sum of $46,624.86. The motion alleged that the indebtedness was evidenced, in part, by two negotiable promissory notes listed as "Item One" and "Item Two," the first dated March 1, 1954, in the sum of $11,000.00, payable 180 days after date to R. A. Hudson, and executed by T. W. Harrell and Guida Q. Harrell; and the second dated September 1, 1954, in the sum of $30,000.00, likewise payable to R. A. Hudson 180 days after date, and executed by T. W. Harrell and Guida Harrell, upon which there was due a balance of $22,223.25, principal and interest, as of August 1, 1957, and certain other items of indebtedness; all subject to certain credits due by reason of an agreement between Hudson, plaintiff, and Harrell and his wife, dated July 11, 1957. Copies of the two notes were attached as exhibits. Each note provided that if not paid at maturity and placed in the hands of an attorney for collection, the makers would pay 15% additional as attorney's fees.

Mrs. Harrell, individually, and as administratrix, promptly filed a response, and a motion to transfer the action to the chancery side of the court. In her response, she alleged that she "was simply and solely the accommodation maker on the two notes set forth as 'Item One' and 'Item Two' in the motion for judgment;" that she believed the amount alleged to be due on the $11,000.00 note was correct; that "the balance due on the note in Item Two was $22,112.68;" that "both of said notes were entitled to a credit as of August 21, 1957, in the sum of $32,074.22;" that her "accommodation indebtedness was fully paid;" and that the balance, if any, due to Hudson was due from the estate of T. W. Harrell. She further alleged that a contract, dated July 11, 1957, was executed by her and her husband for the sale of all of the assets of the Western Auto Associate Store, then owned by her husband, to Hudson, a copy of the contract being attached as an exhibit; that "she signed the contract simply because

she was the accommodation maker on the two notes as therein set forth;" that she had no interest whatsoever in the business known as the Western Auto Store; that her husband was killed on August 8, 1957; that she qualified as administratrix of his estate on August 18, 1957; that the inventories and transfers set out in the contract of July 11, 1957, not having been completed at the time of her husband's death, she, as administratrix, and Hudson, on August 21, 1957, prepared an inventory of the assets, tangible and intangible, of her husband's store, and effected a sale thereof, with certain exceptions, to Hudson; and that in a written agreement and bill of sale, dated August 22, 1957, signed by her and Hudson, the latter acknowledged that the estate of Harrell was entitled to a credit of $32,074.22 against the debts claimed to be due and owing by her husband to Hudson. A copy of the agreement and bill of sale was attached as an exhibit.

The motion to transfer the case to the chancery side of the court was denied on the ground that only issues of law were involved in the proceeding.

At a pre-trial conference, on October 16, 1958, in the presence of the trial court, the parties and their counsel, it was agreed that John W. B. Deeds would act as Special Commissioner, hear the evidence and report to the court as to the respective liabilities of the parties to each other. No order, however, was then entered by the court naming a special commissioner or designating his duties.

On October 17, 1958, over the objection of Hudson, two alleged creditors of the estate of Harrell were allowed by the court to intervene as parties defendant. They filed an answer making a general denial of the claims of Hudson against the estate of Harrell; but they did not present any evidence of their respective claims or the amount thereof before either the Special Comissioner or the court.

After hearing the evidence, Deeds filed his report on April 21, 1959, finding that the estate of T. W. Harrell was indebted to Hudson in the sum of $16,762.03 as of May 1, 1959; that no attorney's fees for collection of the notes mentioned should be allowed; and that Mrs. Harrell, individually, was not liable to Hudson in any amount.

Hudson duly excepted to the holdings with respect to attorney's collection fees, and the exoneration of Mrs. Harrell, individually, on the ground that they were contrary to the evidence and the law, and based upon inadmissible evidence.

The trial court on July 31, 1959, entered a "decree" expressly declaring it to be "a decree *nunc pro tunc* as of October 16, 1958." It recited that whereas, there were complicated matters of accounting as

to the credits, debts, and liabilities of the parties, it was, by consent of the parties, "ordered and decreed" that the case be referred to the said Deeds, as Special Commissioner, to inquire into and report the respective obligations of Mrs. Harrell, individually, and as administratrix. The "decree" did not otherwise specify the duties of the Commissioner.

On September 17, 1959, nine months after her testimony before Commissioner Deeds, the court, over the objection of Hudson, permitted Mrs. Harrell to file an affidavit accompanying a plea putting in issue the question whether her signature on the $30,000.00 note was a forgery.

Hudson died on August 13, 1960, and thereafter prior to the entry of the final judgment herein, the Pulaski National Bank and Thelma H. Hudson, the present appellants, qualified respectively as executor and executrix of Hudson's estate.

The trial court entered a final "decree" on November 29, 1960, confirming the report of Commissioner Deeds, and dismissed Mrs. Harrell, individually, as a party defendant. Judgment was granted the estate of R. A. Hudson against Mrs. Harrell, administratrix of the estate of T. W. Harrell for the sum of $16,762.03, with interest from May 1, 1959. Counsel for the administratrix was allowed the sum of $750.00 to be paid from the estate of Harrell. The court specifically stated that it did not determine or pass upon the priority of Hudson's claim, or the credits or claims of any other creditor against Harrell's estate.

Upon application of appellants, we granted this writ of error.

The real controversy is not between Hudson and the estate of Harrell. It is between Hudson and Mrs. Harrell, individually. The sole purpose of the action was to determine the amount of the indebtedness of Mrs. Harrell, individually, and as administratrix of the estate of Harrell, to Hudson. The indebtedness of Harrell's estate is not in dispute here.

The court proceedings were somewhat irregular, and the evidence taken before Commissioner Deeds was, in many respects, vague, confusing and contradictory. The Commissioner refused to rule on many objections to the admissibility of evidence on the ground that he was without authority so to do; nor do we find any ruling of the trial court upon such objections. The business matters between Hudson and Mr. and Mrs. Harrell were loosely handled; but there is sufficient

competent evidence, oral and written, to enable us to arrive at a definite conclusion as to liability of Mrs. Harrell, individually.

The material evidence before the Special Commissioner at the hearing in October, 1958, may be stated as follows:

R. A. Hudson and T. W. Harrell were partners, during the year 1953, operating a store known as the Western Auto Associate Store in Pulaski, Virginia. By a written contract dated September 1, 1953, the partnership was dissolved, and Hudson sold and transferred all of his interest in the store to T. W. Harrell. By a deed of trust of same date, Harrell and his wife conveyed all of the assets of the store to a trustee to secure a note in the amount of $16,000.00, of even date therewith, executed by T. W. Harrell and Guida Q. Harrell, and payable to Hudson in semi-annual installments of $2,000.00 each, with interest at 6% per annum on the unpaid balance. The deed of trust was recorded on September 30, 1953, in the office of the Clerk of the Circuit Court of Pulaski County, Virginia. Thereafter, the deed was delivered to either Harrell or Hudson. By pen and ink alterations and interlineations, the amount of the indebtedness and the amount of the note, described in the deed of trust, were each changed from $16,000.00 to $34,000.00. The altered instrument bore the notation: "Changed by mutual agreement," and was signed by Hudson and Harrell under date of March 1, 1954. The deed of trust was not re-recorded. No clear explanation was made as to the reason for the alteration, except the suggestion that Harrell's indebtedness to Hudson had increased. Mrs. Harrell stated that the alteration was made without her knowledge.

Harrell became financially involved in 1957 and was unable to meet his obligations to Hudson. After considerable negotiations, Hudson agreed to repurchase the store from Harrell. A contract of sale dated July 11, 1957, setting out in detail the obligations of the parties and the conditions of their agreement, was executed by T. W. Harrell and Guida Harrell, his wife, in which they were referred to as "Seller, parties of the first part," and R. A. Hudson, as "Purchaser, party of the second part." The agreement recited that "The Seller is indebted to the Purchaser on two (2) notes," describing the note of March 1, 1954, in the amount of $11,000.00, payable 180 days after date without interest, as executed by "Sellers" and the note of September 1, 1954, in the sum of $30,000.00, as executed by "Sellers," payable 180 days after date, "balance due, with interest through July 1, 1957, of $22,112.68," exactly the same amount asserted by Mrs.

Harrell in her response to the motion for judgment. The agreement is signed under seal by both T. W. Harrell and Guida Harrell, describing themselves as "Sellers."

Mrs. Harrell admitted that she signed the deed of trust and the $16,000.00 note secured thereby. She also admitted that she signed the note dated March 1, 1954, for $11,000.00, which the Special Commissioner concluded from the evidence was a renewal of the $16,000.00 note described in the deed of trust before its alteration. Over the objection of Hudson, Mrs. Harrell was permitted to testify and to present evidence that she did not sign the $30,000.00 note dated September 1, 1954, which she said she first saw at the pre-trial conference on October 16, 1958. Mrs. Lawhorne, who was bookkeeper for T. W. Harrell, says that she was familiar with the handwriting of both Mr. and Mrs. Harrell; that the signature is not that of Guida Q. Harrell; but is the handwriting of T. W. Harrell.

Among the terms and conditions, the contract specifically provided how and by whom an inventory of the assets of Harrell's store should be taken and made; and that the total value determined by the inventory should be set-off "against the indebtedness due Purchaser by Seller," the latter being the parties of the first part, Mr. and Mrs. Harrell.

The initial "Q" in Mrs. Harrell's name does not appear either in the contract of July 11th, or on the $30,000.00 note therein referred to—the note in controversy here.

On August 21, 1957, Hudson and Mrs. Harrell, as administratrix of the estate of her late husband, met and prepared an inventory of the assets of the Harrell store, showing a value of $32,074.22, "made in accordance with the contract of July 11, 1957." In a written agreement dated August 22, 1957, Hudson purchased the assets of the store, and accepted the inventory valuation as a credit on the indebtedness to him, "pursuant to the contract of July 11, 1957." The credit was allowed in full by the Special Commissioner, and appellants take no exception thereto.

Counsel for Hudson's estate concedes in his brief that two items, one for $350.00 and one for $418.59, allowed by the Special Commissioner, as charges against the estate of Harrell should be deducted from the amount chargeable against Mrs. Harrell, individually. Thus, the accounting between Hudson and Mrs. Harrell, individually, should have shown a balance due Hudson of $15,993.44 from her as of May 1, 1959, instead of $16,762.03. The lesser amount is the balance due

on the two notes, less the credits to which Mrs. Harrell was entitled.

Appellants contend that the trial court erred in failing to grant them judgment, including reasonable attorney's fees against Mrs. Harrell, individually, and as administratrix; in allowing Mrs. Harrell to file the affidavit and plea putting in issue the alleged forgery; in basing its findings on inadmissible evidence and on incorrect interpretations of law; and in permitting other creditors of Harrell to intervene in the proceeding.

In support of their first contention appellants claim that the special commissioner and the trial court erred in admitting and considering parol evidence of what occurred between the parties prior to the contract of July 11, 1957, that is, oral evidence controverting and varying the terms of that contract.

Mrs. Harrell, in her own right and as administratrix, argues that the contract of July 11th, 1957, was vague and ambiguous on its face; and that she was, under the circumstances, not estopped from establishing the fact of forgery of the $30,000.00 note, or the alteration of the deed of trust dated September 1, 1953.

The rule which excludes parol evidence when offered to vary the terms and conditions of an integrated written contract has nowhere been more strictly adhered to in its integrity than in Virginia. It, in effect, declares that, where parties have reduced their contract to a writing which imposes a legal obligation in clear and explicit terms the writing shall be the sole memorial of that contract, and it is conclusively concluded that the writing contains the whole contract, and is the sole evidence of the agreement. *Stewart-Warner Corporation* v. *Smithey*, 163 Va. 476, 487, 175 S. E. 882.

The rule is concisely stated in 7 Michie's Jurisprudence, Evidence, § 131, page 489, and many cases cited in support:

"It is conclusively presumed that the whole engagement of the parties was reduced to writing, and all oral testimony of a previous colloquialism between the parties, or of conversation or declarations at the time when it was completed, or afterwards, as it would tend, in many instances, to substitute a new and different contract for the one which was really agreed upon, to the prejudice possibly of one of the parties, is rejected."

The purpose of the July 11th contract of sale was to settle, fix and determine the respective rights and liabilities of each of the parties thereto. It was a solemn and binding product of substantial negotiations between them, as evidenced by the waiver of interest on the

$11,000.00 note, the specific itemization of the notes, the names of the makers thereof, the original amounts thereon, the balance due, and the precise terms and conditions of the sale.

The contract was a final determination of the respective rights and liabilities of the parties, regardless of what had taken place theretofore, an ultimate conclusion in writing of their prior negotiations, establishing their obligations and liabilites to each other. It determined and fixed the question of the indebtedness due and by whom due. Its recitals, terms and provisions are simple, clear, explicit, and subject to but one interpretation. It was agreed upon at a time when all of the parties were alive, in full possession of their mental faculties, and knew or should have known of the legal import of their action. It amounted to an acknowledgement and ratification of the indebtedness of T. W. Harrell and Mrs. Harrell and the authenticity of the two notes in the amounts set out in the contract.

Nor can it be correctly said that Mrs. Harrell was ignorant of the existence of the $30,000.00 note and its claimed authenticity. Ample notice was given her, both in the motion for judgment and by the contract. She admitted its existence and authenticity, both in her pleadings and in the contract, and went further by setting out the exact balance due thereon, the amount determined by the Special Commissioner, and approximately the same amount claimed by Hudson.

Even if Mrs. Harrell's signature was signed to the $30,000.00 note, without her knowledge or consent, her subsequent acknowledgement and ratification in writing bound her fully. She cannot be allowed, in the language of the Scotch law, "to approbate or reprobate" in the course of the litigation, or in her dealings with Hudson. Her contract of July 11th estopped her from denying liability on the ground of forgery. Cf. *Burch v. Grace Street Building Corporation,* 168 Va. 329, 340, 341, 191 S. E. 672.

Mrs. Harrell appears to have been unaware of the alteration of the deed of trust dated September 1, 1953. However, the contract of sale of July 11, 1957, determining the rights and liabilities of the parties at that time, released the lien of the deed of trust upon the assets of Harrell's store by providing for the transfer of the said assets to the noteholder under the deed of trust, with the provision that they be applied as a credit on the indebtedness of Mr. and Mrs. Harrell as evidenced by the notes. That credit operated to relieve Mrs. Harrell of a considerable portion of her obligation on the notes, and was thus beneficial to her rather than prejudicial. She was bound by the con-

tract, and cannot be now allowed to deny her express acknowledgement and agreement.

We further hold that appellants were entitled to recover from Mrs. Harrell, individually, and as administratrix of the estate of T. W. Harrell, attorney's fees in the matter of the collection of the balance due on the two notes. Each note provided that if default be made in its payment, and if it be placed in the hands of an attorney for collection, the makers would pay an additional sum as an attorney's fee. This occurred as to both notes, and the trial court, in the exercise of its sound discretion, should have allowed appellants $750.00 as counsel fees, an amount we deem reasonable under the circumstances. See *Dermott* v. *Carter*, 151 Va. 81, 87, 144 S. E. 602; *Richardson* v. *Breeding*, 167 Va. 30, 33, 187 S. E. 454.

There are several other assignments of error; but in view of our conclusion, it is not necessary that they be considered.

It is sufficient to say that Hudson performed his obligations under the contract, and is entitled to have Mrs. Harrell, individually, and as administratrix, perform hers.

In consideration of the foregoing, the "decree" or judgment of the trial court is reversed as to its finding in favor of Mrs. Harrell, individually, and in its disallowance of attorney's fees to appellants, and final judgment will be here entered in favor of appellants against Guida Q. Harrell, individually, and as administratrix of the estate of T. W. Harrell, in the sum of $15,993.44, the balance due on the notes, with interest from May 1, 1959, until paid, and for the additional sum of $768.59 against Guida Q. Harrell, administratrix of the estate of T. W. Harrell, with interest from May 1, 1959, and $750.00 for appellants attorney's fees, together with the costs of this proceeding. The allowance of the sum of $750.00, to be paid from the estate of T. W. Harrell, to counsel for the administratrix, is approved and sustained.

*Reversed; amended; and final judgment.*