In re O'NEILL ENTERPRISES,
INC., Bankrupt.

O'NEILL BONDHOLDERS COMMITTEE,
and Gray Williams, Trustee in Bankruptcy for O'Neill Enterprises, Inc.,
Plaintiffs-Appellants,

v.

W. B. JOHNSON PROPERTIES, INC.,
Defendant-Appellee.

Bankruptcy No. 71–130–C.
Misc. No. 80–0009–M–C.

United States District Court,
W. D. Virginia,
Charlottesville Division.

## ORDER

April 22, 1981.

Lloyd T. Smith, Jr., T. Munford Boyd, Charlottesville, Va., for plaintiffs-appellants.

H. Slayton Dabney, Jr., Charlottesville, Va., James R. Harlan, Jr., Atlanta, Ga., for defendant-appellee.

## MEMORANDUM OPINION

MICHAEL, District Judge.

### I. PROCEDURAL HISTORY OF THE CASE

Plaintiffs, Gray Williams, Trustee in Bankruptcy for O'Neill Enterprises, Inc. and the O'Neill Bondholders Committee, are appealing the July 29, 1980, Order of the Honorable H. Clyde Pearson, United States Bankruptcy Judge, wherein he denied plaintiffs' request that defendant, W. B. Johnson Properties, Inc. (hereinafter "Johnson Properties"), be required to purchase certain real estate located in Charlottesville, Virginia.[1]

On May 14, 1979, plaintiffs commenced an adversary proceeding by filing a complaint alleging that Johnson Properties was required to purchase certain real estate located in Charlottesville, Virginia, under the terms of an order entered by the Honorable Philip H. Hickson, United States Bankruptcy Judge, on December 20, 1978, confirming Johnson Properties' offer to purchase the real estate. The complaint requested the court to enter an order requiring Johnson Properties to purchase the property.

Johnson Properties responded that it had no obligation to purchase the property based upon any one of several legal principles, *to wit*; (i) that there was no contractual commitment between the parties because they had never agreed on the essential terms of their understanding; (ii) that the expressed and implied conditions precedent to any obligation of Johnson Properties to purchase the property in question had not been satisfied, and (iii) that Johnson Properties is legally excused from any obligation that it may have to purchase the property.

On December 19, 1979, plaintiffs moved for summary judgment, contending that the offer, acceptance, and confirmation were clear, unambiguous, and constituted a binding agreement which Johnson Properties had anticipatorily breached. The court (Judge Pearson)[2] denied the Motion for Summary Judgment by a Memorandum Opinion and Order entered January 15, 1980, ruling that the alleged contract was vague and ambiguous and that parol evidence would be admissible at trial.

The matter was tried on January 21 and 22, 1980, during which 11 witnesses testified, one deposition was read into evidence, and 48 documents were entered into evidence. Oral argument took place on April 23, 1980, after briefs and reply briefs had been submitted by counsel for all parties. On July 29, 1980, the court issued its Memorandum Opinion and Order. After considering the extensive evidence, Judge

---

1. This appeal was brought pursuant to Rules Bankr.Proc. Rule 801, 11 U.S.C.

2. Due to Judge Hickson's presence during and participation in the formation and entering of the Order confirming the alleged contract, the adversary proceeding was referred to Judge Pearson for trial.

Pearson determined that the plaintiff's request for specific performance should not be granted because Johnson Properties' obligation to purchase the property was subject to a condition precedent which had not been satisfied. Judge Pearson further determined that the contract may very well be voided due to a mutual mistake of fact. However, due to the existence of the condition precedent, Judge Pearson chose not to rule on the issue of mutual mistake of fact or on whether title to the property was unmarketable.

## II. STATEMENT OF FACTS

W. B. Johnson Properties is a developer of restaurants and hotels with its principal offices in Atlanta, Georgia. According to Mr. J. Richard Stephens, vice president of the defendant, Johnson Properties became interested in the Charlottesville area in 1978, and he was sent to Charlottesville to locate a site to develop a Marriott Hotel. After inquiries, Mr. Stephens located the property involved in this proceeding. He was informed that the property was in bankruptcy proceedings and that if he was interested he should contact the trustee, Mr. Gray Williams. Mr. Stephens subsequently contacted Mr. Edward S. Hirschler, an attorney from Richmond, Virginia, and advised him of Johnson Properties' interest in the property and employed Mr. Hirschler to represent Johnson Properties. On October 18, 1978, Mr. Hirschler and one of his associates met with Mr. Williams and on November 2, 1978, Johnson Properties submitted to the trustee a written offer for the property for $250,000. The offer was conditioned on the occurrence of a number of events and the obtaining of several approvals, and specifically noted that the court's order should make provision for all of the conditions. The broadest condition was that "Johnson must be able to determine, to its sole satisfaction, and at its sole expense, that the property can be developed as a Marriott Hotel ..."

Mr. Williams responded on November 10, 1978, providing information concerning certain utility easements and requesting they be specifically included in the offer, and Johnson Properties responded on November 17, 1978, incorporating the information provided by Mr. Williams. At the instance of the bondholders committee, Mr. Williams, on November 22, 1978, filed a notice of motion and petition seeking an order to show cause why the trustees should not be authorized to make an agreement with Johnson Properties to dispose of the property. These papers were forwarded to Mr. Hirschler on November 24, 1978, and between that date and December 6, 1978, five letters were exchanged between Mr. Williams and Mr. Hirschler, the primary purpose of which were to provide Mr. Hirschler information on how the bankruptcy hearing would be conducted. Mr. Williams advised Mr. Hirschler there would likely be another bid on the property and someone from his office should attend and that Judge Hickson expected to approve the best acceptable offer. The trustee also informed Mr. Hirschler that the customary practice of the court was to receive bids, declare a recess, and afford bidders an opportunity to "make one more bid".

The petition came on for hearing on December 18, 1978. At the hearing, Mr. Hirschler introduced himself to the court as counsel for W. B. Johnson Properties and announced his client had a franchise to construct a Marriott Hotel in Charlottesville. Johnson Properties' offer for $250,000 with a number of conditions was presented. A competitive, unconditional offer was presented from Shuford Mills, Inc., the adjoining landowner, for $250,000 case with settlement in less than two months.

The court declared a recess and at the end of the recess, both Johnson Properties and Shuford Mills submitted new bids. Shuford Mills' offer provided:

Amended offer of Shuford Mills, Inc. Letter offer of December 14, 1978 amended as follows:

1. "250,000" amended to $265,000.

2. Settlement date amended to January 2, 1979.

3. Cash down remains $25,000.

S/Edward H. Deets
Agent for Shuford Mills, Inc.

Johnson Properties' offer provided:

December 18, 1978

We hereby offer the sum of $450,000 cash for tracts C and D of the Shuford Mills property provided a building permit to construct a Marriott Hotel with ancillary facilities can be obtained by December 18, 1979, and title is marketable.

$25,000 cash will be deposited as earnest money and if the building permit is not granted within the 12 month period the sum of $2,000 per month or portion thereof shall be forfeited. If the building permit is granted or we decide to take the property in any event, then the earnest money shall be applied to the purchase price.

S/W. B. Johnson Properties, Inc.
J. Richard Stephens
Vice President

The offers were read aloud by the court and the court then asked the trustee and the bondholders to present their wishes with respect to the bids. The bondholders indicated their desire that the offer by Johnson Properties be accepted, and the trustee recommended acceptance and requested confirmation. The court then approved the sale and on December 20, 1978, entered a formal order embodying the offer of W. B. Johnson Properties and confirming the sale. The court's order provided that Johnson Properties would have fifteen days to make known whether the location of certain utility easements on the property would affect marketability of title, otherwise such easements would be presumed not to affect marketability of the title.

On December 27, 1978, Mr. Hirschler transmitted the $25,000 earnest deposit money to the trustee and also expressed his concern that fifteen days might not be sufficient to determine whether utility easements would affect the planned construction. He noted that a building permit could not be obtained unless the easements could be moved. On the same date Mr. Hirschler wrote Judge Hickson expressing the same concern and requested that the time for making a determination with respect to the easements be advanced until February 1, 1979. Judge Hickson responded on December 29, 1978, indicating he thought the request was reasonable and on January 10, 1979, Mr. Hirschler again wrote Mr. Williams enclosing a sketch of an order advancing to March 1, 1979 the time to make known whether the utility easements would be objectionable. The order was subsequently entered by the court.

No more was heard from Johnson Properties or Mr. Hirschler until approximately April 3, 1979, when counsel for the bondholders committee and the trustee received telephone calls from Mr. Hirschler informing them that Johnson Properties would not be able to purchase the property and requesting a conference on April 12, 1979. At the April 12 conference, Mr. Hirschler presented to the trustee and counsel for the bondholders committee a letter of that date which stated that the Marriott Corporation would not approve the location and "because a Marriott cannot be constructed upon the site, it is obvious that a building permit for same cannot even be applied for, much less procured".

## III. MERITS OF PLAINTIFFS' ARGUMENT

■ The role of the court in this case is to sit as an appellate court to review the decisions of the bankruptcy judge. Unless it appears that there was no basis in the evidence for the factual findings, or that there was an erroneous conclusion of law, the decisions of the bankruptcy judge will not be disturbed. *Stein v. Hemker (In re Embassy Co.)*, 157 F.2d 740 (8th Cir. 1946); Rules of Bankruptcy Procedure 810.[3] The

3. Rules Bankr.Proc. Rule 810 holds:

Upon an appeal the District Court may affirm, modify, or reverse a referee's judgment or order, or remand with instructions for further proceedings. The court shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge of the credibility of the witnesses.

issue presented in this case is whether the Bankruptcy Judge erred in admitting parol evidence regarding the alleged contract between the plaintiffs and Johnson Properties. This court must now hold that the Bankruptcy Judge, in finding the alleged contract vague and ambiguous, was in error and that the use of parol evidence was accordingly improper.

■ The general rule in Virginia [4] is well settled, in that parol evidence of prior or contemporaneous oral negotiations or stipulations is inadmissible to vary, contradict, add to, or explain the terms of a complete, unambiguous, written instrument. The writing is the repository of the final agreement of the parties. It is the highest and safest evidence of it, in the absence of fraud or mistake. 7 *Michie's Jurisprudence Evidence* § 130. As the Virginia Supreme Court has held:

> The rule which excludes parol evidence when offered to vary the terms and conditions of an integrated written contract has nowhere been more strictly adhered to in its integrity than in Virginia. It, in effect, declares that, when parties have reduced their contract to a writing which imposes a legal obligation in *clear and explicit terms*, the writing shall be the sole memorial of that contract, and it is conclusively concluded that the writing contains the whole contract, and is the sole evidence of the agreement. *Pulaski Bank, Ex'r v. Harrell*, 203 Va. 227, 233, 123 S.E.2d 382, 387 (1962). (Emphasis added).

*See, also*, 3 *Jones on Evidence*, § 16:1, page 75 (6th Ed., 1972), stating:

> All conversations and parol agreements between the parties prior to or contemporaneous with the written agreement are considered to have been merged therein so that they cannot be given in evidence

It should be noted that Rule 52, Federal Rules of Civil Procedure, Title 28, relating to the effect of the findings of the court, does not restrict the power or duty of the federal District Court to set aside erroneous conclusions of law of the referee in bankruptcy. *Utley v. U. S. (Small Business Administration)*, 304 F.2d 746 (9th Cir. 1962).

for the purpose of changing the contract or showing an intention or understanding different from that which is expressed in the written agreement.

■ Moreover, the rule is far more restrictive with respect to contracts dealing with the purchase or sale of land, mainly as a result of the operation of the statute of frauds. With respect to such contracts, the parol evidence rule "has become a canon of property in relation to real estate ..." 7 *Michie's Jurisprudence, Evidence* § 131.

■ After an independent inspection of the alleged contract between plaintiff and Johnson Properties, the court must conclude that the same imposes a legal obligation in clear and explicit terms and that the use of parol evidence to interpret the same was improper.

The language asserted to be "ambiguous" is that contained in the first paragraph of the Johnson Properties' offer of December 18, 1978. That language certainly is unambiguous as to the facts of an offer, the amount of the offer, and the parcels of land involved (described as "Parcels C & D of the Shuford Mills property", obviously making reference to a plat or survey of that property showing parcels C & D). Certainly, to this point it cannot be said that any ambiguity can possibly be found in this language.

The language of this paragraph then sets out two conditions, which conditions may, for the purposes of this analysis as to ambiguity, be treated as conditions precedent in the real property law sense. Treating the second of these conditions first, the language is, "and title is marketable", while "marketable" in this usage is a word of art, and while reasonable lawyers may disagree as to marketability of title depending on particular circumstances, there is no ambiguity in the statement itself of this second condition.

4. Virginia law is clearly applicable since the parol evidence rule is regarded as a rule of substantive law and not merely as a rule of evidence. *Whitt v. Godwin*, 205 Va. 797, 139 S.E.2d 841 (1965); *Zehler v. E. L. Bruce Co.*, 208 Va. 796, 160 S.E.2d 786 (1968); 10 *Moore's Federal Practice*, § 302.02III4.

The first condition is stated as follows: "provided a building permit to construct a Marriott Hotel with ancillary facilities can be obtained by December 18, 1979, . . .". Again, inspection of the language itself as used in this condition reveals no ambiguity. Unless we look at the words "ancillary facilities" as, again, words of art, of indefinite scope, no hint of ambiguity can be found in the language of this first condition. However, the use of the phrase "ancillary facilities" certainly is clear and definite in its meaning when read in conjunction with that to which the phrase relates, namely, "a Marriott Hotel".

Based on an analysis of the language itself, the court must conclude that there is no ambiguity in that language. The terms of the offer are set out in those "clear and explicit terms" which are the touchstones of this inquiry. *See Pulaski Bank, Ex'r v. Harrell, supra.*

Usually, in any controverted matter involving a contract, ambiguity and uncertainty can be created by consulting post-contract statements of purposes, motives, etc., by the parties, but under Virginia law this inquiry into post-contract matters cannot be made, *unless* the written language under consideration may fairly be said not to set out "clear and explicit terms". This cannot be said of the language under consideration, so that no inquiry into such post-contract matters was proper.

There still remain the questions raised by the conditions stated. The evidence indicates that no serious effort has been made by Johnson Properties to secure the specified building permit. Coupling this with the representations of Johnson Properties made before December 18, 1978, as to its relationship with Marriott Hotels, questions are raised as to the effect of the failure of Johnson Properties to go forward in an effort to meet the first condition. Those questions can be resolved only by a full factual exposition concerning this condition, and an application of the proper legal principles to that fact pattern.

The condition relating to marketability to title does not appear to have been raised by the purchaser, but any possible question relating to marketability of title seems to have been submerged or not asserted in light of the conclusion reached by Johnson Properties that it would not purchase the property, as relayed to the plaintiff by the telephone call of Mr. Hirschler on approximately April 3, 1979.

## IV.  CONCLUSION

Consequently, the judgment of the Bankruptcy Judge is reversed and the case shall be remanded to the Bankruptcy Court for further proceedings consistent with this Memorandum Opinion.