In re Charles W. FRANK, Jr., t/a Frank's Construction & Rental Co., Chuck's Sales and Rentals and Red Dog Mining, Debtors.

GRUNDY NATIONAL BANK, Appellant,

v.

Charles W. FRANK, Jr., t/a Frank's Construction & Rental Co., Chuck's Sales & Rentals and Red Dog Mining, Appellees.

Civ. A. No. 88–0241–A.

United States District Court W.D. Virginia, Abingdon Division.

Aug. 8, 1989.

---

John E. Kieffer, Bristol, Va., for plaintiffs.

Fred M. Leonard, Sondra Allen, Bristol, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

In this bankruptcy case the appellant Grundy National Bank seeks review of the bankruptcy court's determination that the bank and the debtor-appellee Charles W. Frank, Jr. had entered into a valid accord and satisfaction of the bank's claim for recovery of an unsecured deficiency of $326,832.00. The bankruptcy court held, after hearing the evidence, that the parties intended to and did in fact reach an accord and satisfaction of Frank's debt to the bank; that they agreed that Frank would be allowed to keep possession of certain collateral, in return for which he would pay the bank $75,000 in monthly installments of $1500; that the stipulated order which counsel for both parties requested the bankruptcy judge to enter, and which on November 15, 1985, he did enter, reflects this agreement; and that the regular $1500 payments Frank has made since the entry

of the order are proof of the accord and satisfaction.

On appeal the bank insists that (1) the learned bankruptcy judge erred, both in fact and in law, in finding the existence of the accord and satisfaction; and (2) that it was error to consider parol evidence of negotiations between the parties in order to impeach the unambiguous terms of the court's November 15 order.

Findings of fact by the court below will not be reversed on appeal unless "clearly erroneous." *In re Bermec Corp.*, 445 F.2d 367, 368–9 (2d Cir.1971). After listening to the live testimony of the witnesses, Judge Pearson found that Frank's testimony was credible and persuasive evidence of an accord and satisfaction, and this court cannot conclude that Judge Pearson's findings were clearly erroneous.

More serious, however, is the relation of Frank's testimony to the November 15, 1985 order. As noted, this order was requested by counsel for both sides. Specifically, it granted the bank relief from the automatic stay and immediate possession of all collateral except the items at issue here: certain real property (represented by counsel to be Frank's home) in Buchanan County, Virginia, two air compressors, two Chevrolet pickup trucks, and a 1981 Cadillac. The order then stated:

> As to said personal property collateral and the remaining real estate retained by the debtor, it is ORDERED that the debtor pay adequate protection payments of One Thousand Five Hundred Dollars ($1,500.00) per month ... and continuing ... until the principal sum of Seventy–Five Thousand Dollars ($75,000.00) is paid in full, at an annual percentage rate of interest of Fourteen Percent (14%).

Nothing in the order mentions an accord and satisfaction.

Mr. Frank's position, as he testified at a hearing in bankruptcy court on March 8, 1988, was that, before the November 15, 1985 agreement, he had reached an agreement with Grundy National Bank in which he would surrender all collateral in full satisfaction of his debt to them. He had submitted some proposals to the bank in

October, and that he believed that the bank had accepted the one he designated Offer # 2. It read:

> # 2. Let them take back everything *For the Total Debt.* (emphasis in original). With the agreement that they will sell me back the following items.
>
> (Listing the "retained property.")
>
> I prefer # 2 offer over # 1. If they accept # 2 offer, I will also offer them a payment of $1,500.00 per month including there [sic] interest until total debt is paid in full.

It was this offer that he considered to be memorialized in the November 15 order.

The testimony of the bank's representative, as noted, was that he could not remember anything about Mr. Frank's offer or whether it was accepted. He did state that Frank executed a new $75,000.00 note in the fall of 1985, and had made all the $1,500.00 monthly payments since.

"There are numerous statements to the effect that the acts of a court of record are known by its records alone and cannot be established by parol evidence, that such a court or its judge can speak only through the record, and that the records of a court of record cannot be impugned upon matters within its jurisdiction by counterevidence." 20 Am.Jur.2d *Courts* § 55 (1965). The parol evidence rule bars any evidence of a prior or contemporaneous oral agreement to vary, contradict, add to, or explain the terms of a written instrument. *Amos v. Coffey,* 228 Va. 88, 92, 320 S.E.2d 335, 337 (1984). This rule "has nowhere been more strictly adhered to in its integrity than in Virginia." *Pulaski National Bank v. Harrell,* 203 Va. 227, 123 S.E.2d 382, 387 (1962). The instrument must, however, be "complete, unambiguous, and unconditional." *Amos,* 228 Va. at 92, 320 S.E.2d at 337.

■ Therefore, unless there is an ambiguity in the November 15 order, parol evidence to alter its terms is inadmissible. Although Judge Pearson, in his June 23, 1988 opinion, did not mention the parol evidence rule, he did state that the order was "somewhat ambiguous" and explained in a footnote:

As noted previously, the relief order states that, as to 'retained property,' the debtor was to make 'adequate protection payments' of $1,500 per month until the 'principal sum' of $75,000 is paid off. The court assumes, but does not decide, that the retained property was worth approximately $75,000. Whatever 'adequate protection' was intended to mean under § 361 of the Bankruptcy Code, the court does *not* believe that it encompasses monthly payments made by a debtor that are specifically credited toward a 'principal sum' equal to the *total value* of collateral. In other words, the court believes a separate obligation was intended: a new $75,000 debt repayable in $1,500 monthly payments at 14% interest.

Section 361 of the Bankruptcy Code, 11 U.S.C. § 361, is titled "Adequate Protection" and states:

> When adequate protection is required under section 362,, 363, or 364 of this title of an an interest of an entity in property, such adequate protection may be provided by—
>
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

There is an extensive discussion of this section at 2 Collier on Bankruptcy, § 361.01 (1989). The term "adequate protection" has its origins in the treatment of objecting

classes of creditors under Chapters X and XII of the 1898 Bankruptcy Act where a plan was to be confirmed over their objections, "or, put less elegantly, 'crammed down' their throats." *Id.* Collier notes that, once a party requests the bankruptcy court to determine whether the interest of a secured creditor is adequately protected, the duty of the court is not to fashion adequate protection but to pass upon the adequacy of the existing protection or proposals offered by the parties. § 361 simply offers a range of possibilities for providing adequate protection, and, apart from one exception not relevant here, is not mandatory. *Id.; see also* subsection [4]. Section 361(3) is, obviously, a catchall provision giving the courts a free hand to fashion an equitable arrangement. What is important to understand, though, is that a creditor is entitled to adequate protection "as a matter of right and not as a matter of discretion" when the proper parties request it. *Collier,* ¶ 361.01[1].

One of the most common situations requiring protection is the one in which, like the current case, a secured creditor is blocked from obtaining possession of a debtor's collateral by the automatic stay, and the value of the collateral is likely to decline in value. Section 361(1) provides for the trustee to make periodic cash payments to the secured creditor to make up for this. Of course, there is no trustee in the instant case, but although the debtor himself is making the payments, the principle is the same. The intention is to approximately preserve the creditor's *status quo. Id.; In re Bermec Corp.,* 445 F.2d at 369.

Obviously, much of the collateral retained by the debtor in this case—the car, the trucks, and the air compressors—is subject to rapid depreciation, which would make this an appropriate case for protection payments. The bankruptcy judge concluded that the term "adequate protection" could not include monthly payments credited toward a "principal sum" equal to the total value of the collateral. As this court understands it, then, the bankruptcy court believes that if genuine protection payments had been intended, they would have had to be for an amount more or less equivalent to the decrease in value of the collateral—not to the total value of the collateral, which would retain at least some value. Therefore, with the question of the precise meaning of the November order thrown open, the court was free to consider parol evidence in concluding that a new $75,000.00 obligation was intended.

■ The bankruptcy court's conclusion that its order was ambiguous appears to be based solely on its conclusion that the term "principal sum" was intended as a reference to the total value of the collateral. (The court specifically said that it assumed but did not decide that the total value of the collateral was $75,000.00.). "Principal" is defined in Black's Law Dictionary (5th ed. 1979) as "the capital sum of a debt or obligation, as distinguished from interest or other additions to it," or "an amount on which interest is charged or earned." This court cannot agree that the inclusion of the phrase "principal sum" creates an ambiguity in the November 15 order. As the bank points out, "adequate protection" is a term of art under the Bankruptcy Code and it would have no meaning and no purpose in the order if a new, separate $75,000 obligation had been intended, as the bankruptcy judge concluded. The plain meaning of the order is that the debtor agreed to make protection payments to the bank; that the total amount of the payments— i.e., the amount of depreciation the payments would make up for—was $75,000.00; and that the bank, in compensation for not receiving the collateral instantly through the lifting of the automatic stay, would receive interest at the rate of 14% on the "principal sum," i.e., the total obligation, of $75,000.00. It is only by fastening a questionable meaning on the phrase "principal sum," and ignoring the parties' intention to create adequate protection, that the bankruptcy court found it possible to declare an ambiguity and erect a rickety superstructure of parol and speculation resulting in the conclusion that the parties meant something wholly at odds with what they had memorialized in writing.

The evidence given at the March 18 hearing was a classic demonstration of the rationale behind the parol evidence rule. The debtor testified to one thing. An officer of the bank, testifying 2½ years after the

fact, could not recall anything. It was then up to the court to reach some conclusion about what really happened. This parol evidence rule was fashioned because, without it, business affairs would be reduced to a state of perfect confusion. No person could depend upon the terms of any written instrument, since it is possible to take almost any isolated phrase or word out of context and find an ambiguity. The court believes that, read in context, the November 15 order is consistent with § 361, but under no circumstances is it consistent with the plan alleged by the debtor without filling in gaps and ignoring completely the statement that the payments were "adequate protection." If the debtor had intended to strike a deal like the one suggested by the bankruptcy court, he had an opportunity to memorialize it in the November 15 order; since something else entirely was memorialized, the debtor will not now be heard to deny it.

Accordingly, the decision of the bankruptcy court will be reversed; the cause will be remanded for further proceedings, and the case will be stricken from the docket of this court.

An appropriate Order will enter this day.