979 F.2d 847
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
GENERAL TRUCKING CORPORATION, Plaintiff-Appellant,
v.
WESTMORELAND COAL COMPANY, Defendant-Appellee.
 No. 92-1225.
 United States Court of Appeals,
Fourth Circuit.
 Argued: September 30, 1992
Decided: November 23, 1992
As Amended Jan. 5, 1993.
 
 Appeal from the United States District Court for the Western District of Virginia, at Big Stone Gap. Samuel G. Wilson, District Judge.
 Argued: Daniel Knowlton Read, Jr., Jessee & Read, P.C., Abingdon, Virginia, for Appellant.
 Stephen McQuiston Hodges, Penn, Stuart, Eskridge & Jones, Abingdon, Virginia, for Appellee.
 W.D.Va.
 AFFIRMED.
 Before PHILLIPS and LUTTIG, Circuit Judges, and TRAXLER, United States District Judge for the District of South Carolina, sitting by designation.
 PHILLIPS, Circuit Judge:
 
 
 1
 General Trucking Corporation ("General") appeals from a summary judgment rejecting its several claims against Westmoreland Coal Company ("Westmoreland") growing out of Westmoreland's refusal to accept certain coal mined by General on Westmoreland's land under a contract between the two. Because we conclude that the district court properly entered summary judgment on the record before it, and did not abuse its discretion in limiting General's efforts to obtain further discovery, we affirm.
 
 
 2
 * From 1972 to 1984, General, a Virginia corporation, contracted with Westmoreland, a Delaware corporation, to mine coal on Westmoreland's property. In 1984, Denver Browning, Ralph Tomlinson, and Jim Smallwood ("the Browning interests") began negotiations to buy General. During those negotiations, the Browning interests discussed with Westmoreland the possibility of continuing to mine Westmoreland properties. Westmoreland allegedly represented to them that long-term mining and marketing prospects existed on the properties. In 1985, the Browning interests bought General and, with both parties represented by counsel, entered a new contract with Westmoreland.
 
 
 3
 The contract provided that it expressed the complete understanding of the parties. The contract's one-year term, or its successive one-year extensions, could be terminated by either party"with or without cause," after 60 days' notice, on any anniversary date. JA 13. Westmoreland also could terminate the contract if General defaulted on its obligations to comply with all applicable laws, rules, and regulations, including the obligation to maintain workers' compensation insurance.
 
 
 4
 The contract also held General wholly responsible for expenses incurred in the performance of its obligations. These expenses included capital investments in improvements to Westmoreland properties, such as roads, and bonds posted with the Commonwealth of Virginia to secure General's obligation to reclaim the property after strip-mining it. Finally, while General was obliged to deliver all coal mined under the contract to Westmoreland, Westmoreland retained the right to refuse coal mined by General "for any reason whatever which in Westmoreland's sole opinion makes it impractical, uneconomical or unwise to take or accept such coal." JA 15. The contract provided that Westmoreland would incur no liabilities to General upon such refusal. Id.
 
 
 5
 Shortly after the contract was signed, several of Westmoreland's major customers canceled or curtailed their contracts to purchase coal. In one instance, Westmoreland responded by selling a $35 million contract back to Georgia Power Company. Westmoreland also passed these lost sales on to its suppliers. Between 1985 and 1988 Westmoreland obtained price reductions from General, and also rejected some of General's coal. General suffered financially as a result. It fell in arrears on its workers' compensation and health insurance obligations, and on its employment withholding taxes to the IRS, thus violating the terms of its contract with Westmoreland.
 
 
 6
 Westmoreland notified General on January 15, 1988 of its intention to terminate the contract for breach. General's employees went on strike in February 1988; the Westmoreland contract terminated in March, and in 1989, when General failed to complete reclamation, the Commonwealth of Virginia began proceedings to forfeit its reclamation bond. In February 1990, General sued Westmoreland in Virginia state court, claiming breach of contract, unjust enrichment, and estoppel, and seeking indemnification for the forfeited reclamation bonds. Westmoreland removed the action under diversity jurisdiction, and counterclaimed for breach of contract.
 
 
 7
 Although General had filed suit in February 1990, it failed to request any document discovery or to notice depositions until the end of October, 1990. Trial was scheduled for June 21, 1991. Westmoreland moved for summary judgment on April 26. Because General's counsel was hospitalized shortly thereafter, the court rescheduled trial for early December and set argument on the summary judgment motion for July 30. On July 24, General moved to delay the summary judgment hearing until early September, citing counsel's slow recuperation and failure to complete discovery. Only on the court-ordered deadline of August 7, 1991 did General serve its second notice of depositions and request for documents.
 
 
 8
 Westmoreland objected to the renewed discovery, and General moved to compel. Westmoreland then partially complied and sought a protective order for the remainder of the materials sought. Given Westmoreland's partial compliance, the court denied General's motion to compel. The court also denied General's later Rule 56(f) request that the court again delay ruling on Westmoreland's summary judgment motion to permit additional discovery.
 
 
 9
 After a hearing, the court granted Westmoreland's summary judgment motion. General then moved for leave to amend its claim against Westmoreland. The court granted the motion, but did not enter an order to that effect because it held the amendments irrelevant to the outcome of the case. Judgments dismissing General's claims on the merits, and dismissing Westmoreland's counterclaim without prejudice were then entered. Following denial of its motion for reconsideration, General filed notice of appeal and moved the district court 1) to allow General to file discovery documents to clarify the record in aid of the appeal; 2) to memorialize its orders denying General's motions to compel discovery and to delay the summary judgment hearing; and 3) to enter the order granting General's motion to amend its pleadings. The court denied these three motions as well, finding no clarification of the record necessary. JA 183.
 
 
 10
 General raises three basic issues on appeal. The principal one is the propriety of the district court's entry of summary judgment for Westmoreland, rejecting on the merits General's claims for breach of express contract, unjust enrichment, estoppel and indemnification. The other two are closely related challenges to the district court's denial of General's motion to compel further discovery, and its later motion under Rule 56(f) to delay ruling on Westmoreland's summary judgment motion to allow it further discovery.
 
 
 11
 We take these in order.
 
 II
 
 12
 The district court rejected General's principal claim for breach of express contract on the basis that by its unambiguous terms the contract gave Westmoreland the right, limited only by an implicit requirement of good faith, to do exactly what it did in declining to take some of General's coal and in ultimately terminating the contract for breaches by General of its obligations. The court concluded that on the record before it, General had failed to demonstrate the existence of a genuine issue of material fact respecting Westmoreland's good faith in taking the action alleged as breaches of contract. On the court's analysis of that record, Westmoreland's evidence as forecast demonstrated, without adequate challenge to raise a triable issue, that Westmoreland's actions were justified and explained by valid economic considerations.
 
 
 13
 Having found the contract a valid and enforceable one by implying in it a good faith obligation, the court then dismissed the claim for unjust enrichment on the basis that it could not lie where such an express contract existed. On the same basis, the court rejected the claim of estoppel (action in reliance), as precluded from proof by the parol evidence rule.
 
 
 14
 Reviewing this summary judgment ruling de novo, we affirm it.
 
 
 15
 Applying Virginia law, the district court properly implied a good faith obligation on Westmoreland's part in exercising the literally unlimited right under the contract to refuse coal mined by General "for any reason whatever which in Westmoreland's sole opinion makes it impractical, uneconomical or unwise to take or accept such coal." See Carpenter v. Virginia-Carolina Chemical Co., 98 Va. 177, 35 S.E. 358, 360 (1900); see also Big Horn Coal Co. v. Commonwealth Edison Co., 852 F.2d 1259, 1268-69 (10th Cir. 1988) (good faith requirement implied in exercise of "sole discretion" conferred by contract); Tymshare, Inc. v. Covell, 727 F.2d 1145, 1153-54 (D.C. Cir. 1984) (same, applying Virginia law).[1] The court then properly concluded that on the record before it, General had failed to raise a genuine issue of fact respecting Westmoreland's proffer of valid economic reasons for its actions, so that Westmoreland was entitled to judgment as a matter of law. General's arguments to the contrary on this appeal do not persuade us.
 
 
 16
 Primarily, General contends that because its summary judgment evidence indicated that Westmoreland could, from time to time, have realized a greater profit by taking General's coal than that of other producers, a genuine issue of Westmoreland's good faith in rejecting it is raised. As the district court correctly noted, however, the relative cost of General's coal at any particular time was only one of a number of economic factors that properly could influence Westmoreland's business judgment whether or not to take it. Even more critically, General proffered no evidence suggesting that any extrinsic factor-such as personal animus or actually illegal motive-prompted Westmoreland's actions. Westmoreland was only bound to act on the basis of honest-not necessarily correct-business judgment in deciding whether to take particular coal from General. We therefore agree with the district court that a jury could not rationally find bad faith on Westmoreland's part solely on the basis that in rejecting some of General's coal at particular times during their relationship it may have foregone some immediately available profit.
 
 
 17
 General further contends that its proffered evidence that Westmoreland declined, upon General's request, to allow General to sell its coal on the open market, raises a genuine issue as to Westmoreland's good faith. We disagree. In the first place, the inquiries made by General were couched in such hypothetical terms that nothing respecting motivation could rationally be inferred from Westmoreland's failure to respond affirmatively to them. See JA 140-41. Only speculation could make such a leap, and that cannot be allowed. Additionally, any general inference of bad faith in Westmoreland's dealings with General during the period of their contractual relationship is belied by the unrefuted indications of Westmoreland's willingness to cover some of General's health benefit payments and to extend credit for undelivered coal. See JA 73-74, 89-90.
 
 
 18
 Finally, General contends that the undisputed evidence that Westmoreland sold back to Georgia Pacific one of its most important contracts for coal sales raises a genuine issue as to Westmoreland's good faith in declining to take General's coal. The suggestion is that a jury reasonably could infer that Westmoreland's motive in surrendering this major market for its coal was to dry up General's market and thereby make performance of General's obligations under its contract with Westmoreland impossible. We agree with the district court's implicit conclusion that to infer bad faith from such attenuated evidence would require raw speculation, not rational reasoning. This evidence therefore could not suffice, either alone or in combination with other evidence in this record, to forestall summary judgment for Westmoreland.[2]
 
 
 19
 Having properly found the express contract a valid and enforceable one once a good faith obligation on Westmoreland's part was implied, the district court correctly ruled that the unjust enrichment claim failed as a matter of law. See, e.g. Acorn Structures, Inc. v. Swantz, 846 F.2d 923, 926 (4th Cir. 1988) (parties' right and duties growing out of contractual relationship wholly defined by express contract). Similarly, the court correctly ruled that the estoppel claim failed as a matter of law because it was dependent for proof upon extrinsic facts barred from consideration by the parol evidence rule. See Pulaski Nat'l Bank v. Harrell, 203 Va. 227, 123 S.E. 2d 382, 387 (1962).[3]
 
 III
 
 20
 Though we have now held that the district court properly granted summary judgment against General on the record before that court, it remains to consider General's contentions that the court committed prejudicial error by its two rulings limiting General's discovery efforts. The argument is that had discovery been allowed, the record thereby developed would have sufficed to withstand summary judgment, hence that the rulings were prejudicial, requiring reversal and remand.
 
 
 21
 As indicated, the challenged rulings are related: the denial of a motion to compel further discovery by Westmoreland following its only partial compliance with General's second set of discovery requests, and the denial of General's later motion under Fed.R.Civ.P. 56(f) for a delay in summary judgment hearing and ruling to permit it further discovery.
 
 
 22
 We take these in turn, reviewing both rulings under an abuse of discretion standard. La Rouche v. National Broadcasting Co., 780 F.2d 1134, 1139 (4th Cir.) cert. denied, 479 U.S. 818 (1986) (denial of motion to compel); VISA Int'l Service Asso. v. Bankcard Holders of America, 784 F.2d 1472, 1475 (9th Cir. 1986) (denial of Rule 56(f) motion).
 
 A.
 
 23
 In denying a motion to compel discovery, a court may abuse its discretion by making a decision that is clearly arbitrary or lacking any basis in the record, or that is based on a mistaken conclusion of law or a clearly erroneous finding of fact. Heat and Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1022 (Fed. Cir. 1986). Or, as another court has put it, by (1) failing to take into account a significant relevant factor; or (2) giving significant weight to an irrelevancy; or (3) weighing the proper factors but committing a clear error of judgment in doing so. Kern v. TXO Production Corp., 738 F.2d 968, 970 (8th Cir. 1984).
 
 
 24
 Relying on the latter formulation, General contends that the court abused its discretion in denying its motion to compel discovery by ignoring two material factors: first, the content and purpose of General's August discovery requests; second, General's reasons for failing to complete discovery before the motion to compel was heard. We disagree.
 
 
 25
 General's August request for documents and notice of depositions clearly describe the information sought. There is no indication that the court misread or ignored the content of these requests. Nor is there any support for General's claim that the court misunderstood the purpose behind these requests. The memorandum opinion, to which General points for support, shows instead the court's firm grasp on General's theory of the case: that Westmoreland's decisions to cut its coal intake from General were not reasonably based on economic considerations, and consequently were in bad faith.
 
 
 26
 Thus, while General disagrees with the weight the court accorded both to the evidence General sought and to its reasons for seeking it, the record shows that the court did not ignore these factors. Moreover, General's failure to pursue discovery in a more timely fashion weighs heavily against it. General waited eight months after filing its complaint against Westmoreland before initiating discovery. Even after obtaining a delay in the summary judgment hearing, General only sought discovery of information identified as relevant in January on the court-ordered deadline of August 7.
 
 
 27
 General submits that it "conceded the priority of Westmoreland's discovery requests" and took eight months to satisfy them because General's records "were dispersed and in disarray." Reply Brief for Appellant at 9; Brief for Appellant at 14. Under Fed. R. Civ. P. 26(d), however, "the fact that a party is conducting discovery, whether by deposition or otherwise, shall not operate to delay any other party's discovery." The interpretive comment to Rule 26(d) points out that "one party's initiation of discovery should not wait upon the other's completion, unless delay is dictated by special circumstances."
 
 
 28
 General offers no such special circumstances. It claims not to have anticipated Westmoreland's invocation of the specific economic factors upon which it relied as justification for its actions. Because such a possible justification is written into the very terms of the contract, however, General's failure to have appreciated its obvious relevance fails to qualify as a special circumstance. And, while General's counsel suffered a serious illness during the pendency of the suit, that illness occurred more than a year after General filed suit and the court delayed final disposition of the case twice in response. On this record, the court was well within its discretion in denying General's motion to compel.
 
 B.
 
 29
 Fed. R. Civ. P. 56(f) permits the court to delay hearing and ruling on a summary judgment motion to allow further discovery where the party opposing summary judgment "cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Fed. R. Civ. P. 56(f). In considering whether denial of the motion constitutes an abuse of discretion, the reviewing court must also consider whether the motion was timely and identified specific sources of relevant information, providing a basis for belief that the information sought actually existed. VISA Int'l, 784 F.2d at 1475.
 
 
 30
 General claims to have "articulated what discovery might produce" by submitting cost data showing some of General's rejected coal to have been more profitable to Westmoreland than that taken from some other Westmoreland suppliers. General argues that this evidence would have shown Westmoreland's defense to be pretextual.
 
 
 31
 As our discussion in Part II has indicated, if the only additional information sought to be obtained by a delay was data showing that some of General's rejected coal would have been more profitable than that taken from other suppliers, it could not have tipped the summary judgment balance in General's favor. As the district court ruled, and as we now have concluded in affirming, that factor alone-even if conceded-could not serve to create a genuine issue of material fact as to Westmoreland's good faith in rejecting General's coal and terminating the contract. Hence, the lack of relevance of this additional evidence weighs heavily in support of the district court's refusal to hold up summary judgment proceedings while additional discovery was sought.
 
 
 32
 Also weighing in favor of the court's refusal was the dilatoriness of General's efforts to obtain this and other discovery throughout the proceedings. Nineteen months after filing suit, and after having been given two prior delays in the disposition of the case, General finally filed the Rule 56(f) motion on the very day of oral argument on Westmoreland's summary judgment motion. General presented by its counsel's affidavit purported reasons for its failure to act earlier. These reasons included General's inability to peruse the "voluminous records" received from Westmoreland during the two weeks between their production and the hearing, or to obtain the depositions needed to "enable their comprehension." JA 135. These failures, however, must be charged primarily to General's own delays in seeking the relevant information.
 
 
 33
 Moreover, "the mere hope that something might turn up in further discovery does not satisfy the standards of Rule 56(f)." Goodell v. Rehrig Int'l, Inc., 683 F. Supp. 1051, 1054 (E.D. Va. 1988), aff'd, 865 F.2d 1257 (4th Cir. 1989), and courts must be concerned not to reward dilatory tactics with extended opportunities to continue what properly can be viewed as unfocused fishing expeditions. See Lamb's Patio Theatre, Inc. v. Universal Film Exchanges, Inc., 582 F.2d 1068, 1071 (7th Cir. 1978).
 
 
 34
 General also contends that denial of its Rule 56(f) motion for delay was an abuse of discretion because the materials it sought were then the object of outstanding discovery. This fact may well make denial inappropriate in a proper case, see, e.g., VISA Int'l, 784 F.2d at 1475, but this is not such a case. Here, in contrast to the situation in VISA Int'l, upon which General relies, the district court had already declined to compel discovery of these materials in response to General's earlier motion. Accordingly, the materials were not the object of outstanding discovery when the court denied General's Rule 56(f) motion.
 
 
 35
 Accordingly, we hold that the district court did not abuse its discretion in denying the motion under Rule 56(f) for delay to permit further discovery.
 
 IV
 
 36
 The judgment of the district court dismissing on the merits all of General's claims is
 
 
 37
 AFFIRMED.
 
 
 
 [1]
 In so holding, the district court rejected Westmoreland's primary position, relying on dicta in Big Horn, 852 F.2d at 1267-68, that its discretion under the contract was not even limited by any good faith requirement, and instead adopted Westmoreland's alternative position that only a good faith requirement, comparable to a business judgment rule, so limited its discretion
 
 
 [2]
 For the same reason, this evidence does not suffice, as General claims, to draw in issue-by demonstrating forced impossibility-Westmoreland's otherwise unrefuted evidence that General was in breach of its obligation to maintain workers' compensation insurance and pay in withheld employment taxes, thereby justifying Westmoreland's early termination of the contract
 
 
 [3]
 We agree with Westmoreland's original position-raised in its answer-that the so-called "indemnification claim" is not properly treated as a separate claim, but merely a damage item which falls with the express contract claim